Good morning, may it please the Court. Jim Bickerton for Plaintiffs' Appellants. Welcome back. Thank you. It's been a while. I've learned my lesson from the last one, and I think this one is very similar to the Lowther case, very similar issues. There is a slightly different issue in this one, though, that bears study, and that is that two of the three plaintiffs had land court property. And one of the things that counsel in Lowther argued to you is that there's no statute that formally requires that mortgage assignments of the mortgage, not the note, that mortgage assignments be recorded. That was true for the type of property that Mr. Lowther held, which is what we call regular system property in Hawaii. But we also have the Torrens land court registration system. About 25 or 30 percent of the properties seem to be that's chapter 501, and chapter 501 section 116 expressly requires that assignments of the mortgage be recorded. And so that's what they do. They have to do that. You cannot, I know one of the things is that you can't judicially foreclose on land court property without an assignment of the mortgage. You can't go to land court and wave the note around or say I got the note under the UCC. So we have two properties that fall into a situation where land court assignments were registered and they were false. New Century did not have a single thing in 2009, nothing left. What about the standing issue with respect to not having standing with respect to the challenge of the assignment? Well, I have two comments about that. The first one is, again, this is the point I was making earlier in the Lauther case, that there's a great distinction between challenging the assignor's right to assign and the assignee's right to receive. And all of the cases that have focused on the latter one said, well, that's merely voidable because it deals with the terms of the PSA and it's between the two of them. And if the assignor and assignee are okay with it, you as a third party, it's just voidable between them, so you have no standing in contract law. But we are making a different point, a very different point. We're saying if the assignor has nothing to assign, that is a void assignment. And every case now has held that you do have standing to challenge a void assignment. What do you do with a Brody case? I'm sorry, I'm not familiar with that one. Brody v. Northwest Grand Service, Inc. The district court concluded in that case that Brody lacked standing to challenge the transfer and assignment of the note and deed of trust because she is neither a party to nor a beneficiary of the assignment and transfer. Many, many cases hold that, but they're all in the context of them challenging that the assignment violated some aspect of the receiving parties, the assignee's trust. I'm not sure, without having read Brody, I don't know if it raises the point that we raise. Very few cases have addressed this point. Did the assignor have something to assign when they made the assignment? And these mortgages were assigned before the bankruptcy, correct? The assignments that they recorded in land court to effect these foreclosures were after the bankruptcy and after the liquidation. But one point I'd like to make a little bit different, this whole idea of standing, you can have standing to challenge an assignment. It's not the same. And I believe we cite a case called Bergman. It's not the same as standing to bring a UDAP claim, to bring an unfair and deceptive act claim. In other words, this is again the problem that district judges in this district do all the time. They take common law principles and they say, okay, you don't make it under the common law, therefore you can't make it under a UDAP claim. And here, just to be clear, the UDAP claim includes the quick claim mortgage issue, correct? It does. Which is what I asked you about. Yes. That's part of the overall UDAP. They're all tied together. This is a system and a scheme by which the banks acquire the property for themselves. We make the allegation and we get the property 98% of the time. The reason that they want this false assignment in the record is they know they're going to have to flip this. And they want a provenance. And it's too troublesome and inconvenient to show the true provenance, so they make one up. Is that an unfair and deceptive practice? The only standing that I need for making an unfair and deceptive claim is that I'm a consumer and I'm injured. That's it. There's nothing about, gee, was it void or nearly voidable? It's a separate analysis. And in fact, we cite a case, I think we cited it in all of these, but I believe we cited in this case the Permilife case from the U.S. Supreme Court, which is an antitrust case and Hawaii follows Clayton Act cases in applying its UDAP statute. Permilife said, we don't automatically apply any common law defenses in a UDAP case. We carefully examine to see if they are consistent with the policy that we're trying to implement in the Act. And Hawaii has laid out its policy of protecting consumers from unfair and deceptive practices. So the question is, were consumers harmed because the bank is using as an integral part of its scheme to acquire their property, was using a piece of paper that not one lawyer is going to get up here and tell you was true. It wasn't true. New Century had nothing. It had given it or sold it all the way years before. So it was a false piece of paper. And this is a, it's a difficult thing for courts to accept because it calls into question the whole foreclosure scheme. And I don't want to be here crusading for everyone in the country. I'm just fighting right now for these three plaintiffs. But they clearly had a false piece of paper put in the record and then used to take their property. And I think the question of whether that's unfair and the question of whether it caused harm are jury questions and I should not have to be here on a Rule 12b6 motion. I'd like to reserve the rest of my time if I have questions. Thank you. May it please the court. Thomas Peterson on behalf of the trustee. This case is much like the Lowther case and I haven't had the benefit of hearing that argument. But before I get too far we have here again the same situation you had in Lowther. There's two things that are before you. The first is the first amended complaint. That's what was dismissed. The second is a proposed second amended complaint as to which the court denied leave to amend. So as to that the question is really whether or not there was an abuse of discretion as to that. And I think what I'd like to start there if I may because in the earlier argument both Judge Nelson and Judge McKeon had some questions that I think are equally pertinent in our case with respect to that. And the question is whether there was an abuse of discretion in denying leave to amend and the amendment proposed adding a cause of action based upon this quit claim deed issue. And you can't find in this case a basis to conclude that there was any abuse of discretion in injecting that into the case for several reasons. First as Judge Gilmore noted the case had already been pending for more than a year at the time this amendment issue arose and also notably the plaintiff was given one opportunity to amend as of right. Second, Mr. Bickford was counsel in this Lima case that another panel of this court recently reversed which has such a claim in it and he knew about the claim. He knew about it from the inception of this case. He could have put it in this case and not only did he not put it in this case, but he affirmatively told Judge Gilmore that this case had nothing to do with such a claim. And if you look at supplemental excerpts of record 147 to 148, there was a proposal before the district court to send this case, the Liza case, over to Judge Mulway who had pending the Lima case on the theory they were related and it would make sense to all be in one place. And Mr. Bickford vigorously resisted telling the court, quote, the Lima action relates to the improper marketing methods used to advertise foreclosure auctions such as the false advertisement that the sales would be by quit claim conveyance. By contrast, the Liza action has nothing to do with procedures followed at the auction. So how could you say the court abused its discretion in excluding such, in declining to allow an amendment in such a case? And I would finally point out in our supplemental authority letter that we submitted to you on Monday, one of the points we, one of the things we've drawn to your attention is that in that Lima case, which is in the district court, Mr. Bickford's clients are class members. So why in the world, you know, if they want to pursue a claim with respect to this foreclosure, I'm sorry, the process of foreclosure, something having to do with whether there's arguably a quit claim issue that they might be able to pursue, they're already plaintiffs in the court, so there's no reason at all why you'd want to revitalize this case. And that I think also goes to Judge McKeon's question. There's really nothing for you to certify to the Hawaii Supreme Court in this case because... If we agree that there's no abuse of discretion on the Second Amendment complaint. I think that's right, though I think there's some other factors you could take into account as well. I mean, you know, one factor, for example, is that this Hawaii scheme for non-judicial foreclosure has been repealed since 2012, so we're dealing with, you know, the tail end of a statutory system. And might I also point out that this Lima case, this Wells Fargo case that you talked about earlier, you're aware of, those cases have these claims, they're back in the District Court, and then Hawaii District Courts can certify questions if they think it's worthwhile. I don't think this court needs to do that. So let me then double back over to this issue with respect to the First Amendment complaint. And again, I think it's very important that you have to focus on what was the theory of the First Amendment complaint? And the place to look I think that brings it through totally clearly is first in defining the elements of that cause of action in paragraph 7 of the First Amendment complaint, the class is defined by references to people as to whom there were these conveyances after the appointment of the liquidating trustee of New Century on August 1, 2008. That's how the class is defined. Next, look at what the charging allegations are. And all of the claims drive off of the charging allegations which you're going to find in paragraph 44. And those are prefaced by the following statement. All of these foreclosures involve the use of the unauthorized, improper, void, ab initio, unfair and deceptive assignment of New Century notes and mortgages after 8-1-0-8. So, in response to that allegation using SEC documents, and I heard in the earlier argument a suggestion that those don't come in for their truth. That's just false based on the Ninth Circuit's decision called Daniels which we cited to you. The court can take judicial notice of them. They were taken judicial notice of here without objection and that case says you consider them for truth. Just as when there's a documented issue like a note and it goes in the record, you can take judicial notice of that as well. So here, what we have is a situation where those assignments are assignments as to which the plaintiff doesn't have any standing to object. That's established by the Rajaman case in the Second Circuit which goes through and deals with issues like, well is it the case that perhaps there was nothing to assign and may the plaintiff therefore object on that basis? Answer, no. They don't have a right to object. They don't have standing to object because they're not a party to these assignments. This court in the Turner case decided four months ago, published opinion, we pointed it out to you in our supplemental authorities letter, that again this court under California law recognizes that there's no standing to challenge these sort of conveyances that have to do with a securitization arrangement. And the Hawaii... I ask you to distinguish because the plaintiff's counsel here, Mr. Rickerton, is trying to make a distinction between this whole bevy of no standing cases because there is no standing for a third party to challenge the improper assignment. And his argument, as I heard it, is this is not that case. We're saying that if you have an assignment that's a void ab initio, then there is no standing to address his point and his claim that he's making a different argument than these other cases are addressing. Sure, I think there's two aspects to what he's saying. Let me start with the void ab initio. These cases, Rajaman, Turner, the Hawaii Supreme Court's decision in Mattis, which albeit a judicial foreclosure case, also says no standing to challenge these kind of intermediate transactions. Those are characterizing these transfers as voidable. Here, and we offered you all the bankruptcy authority, which shows that even if you thought that the liquidating trustee didn't approve of this transfer, as to which there's all sorts of evidence we put in the record, judicially noticeable of how it was approved, it would be no more than a voidable transaction. So we don't fall into that void category at all, Your Honor. So therefore, the standing point is a valid one. I think his other point that he's trying to make is somehow you analyze the but that doesn't fly, because what does the UDAP require? The UDAP requires either deception or it requires unfairness. Well, there's nothing about these documents which have no bearing on the legitimacy of the foreclosure process. They're not required as you heard in the earlier, louder argument. You don't have to record this. You don't need these assignments. The record here establishes that the trustee, as to each of these trusts, acquired the right to enforce, going back to the date of formation of the trust, which was long before any bankruptcy. Moreover, this is a belt and suspenders kind of case, because what you also have in this record, you have copies of the notes themselves. The notes which have on the blank, on the back, blank Allonge endorsements, which under the UCC mean as the absolute right to foreclose on it. A proposition the Hawaii Supreme Court confirmed for you a few months ago in the Reyes-Torres case, which Mr. Bickford wrote you about, and we noted in our supplemental authorities letter as well. So this had nothing to do with the ability of the bank to foreclose. And, you know, going back to the whole UDAP point, it's interesting to my way of thinking, apart from the lack of any kind of deception or confusion or any kind of unfairness, what's the third prong? Materiality. What is material about this from the point of view of the ability to foreclose on the property when the record here conclusively establishes that the trustee had that right at any time? Okay, now, the argument that the ASINOR had nothing to assign, and therefore the transaction is void, would seem to me to have some validity if there were someone else out there who could go after and enforce the note, and that there was some other entity. I take it that's not the case here. No, Your Honor, I'm glad you brought that up, because that was where I was planning to close, frankly, is just point out. You know, Judge Gilmour, too, is interesting. She talked about this question of standing in the context of a lawsuit where all the foreclosure has already taken place. I mean, she kind of didn't try to deal with the question of, suppose you had that unusual case where a plaintiff does, in fact, come in and demonstrate that, you know, Tom Peterson is trying to foreclose on my property and has no business doing it. There's plenty of remedies to deal with that. The Mattis case carves out the void transfer scenario, but what we don't want to do is, you know, nonjudicial foreclosure is supposed to be speedy and efficient, and what we don't want to do is gum it up with requirements that are not in the code in circumstances where there's no competing claimant. There's no suggestion the money hasn't gone to the right place. This is just an effort to delay, and if I may just respond to one more thing, and I apologize, but my friend started out by suggesting that there's some recording requirement with respect to the property here, and I just wanted to draw your attention to HRS 501-146, which is what he drew to your attention, and if you read the first two sentences of it, it makes clear that you can assign by any means that's lawfully sufficient for that purpose, and the recordation is just what recordation often serves to, which is to give notice, and that's confirmed by the Hawaii Court of Appeal decision, the intermediate court's decision in the Markham case as well. Thank you. Thank you. I'd like to start with the amendment. I find this sort of illustrates the problem that we had in the Sigwert case. I was asked, well, you wanted to just take your chances on appeal. In Lisa, we went ahead and took the court's invitation and it didn't fare any better. It reminds me of Alice in Wonderland where you get jam yesterday and jam tomorrow and no jam today. I'm not suggesting that this is the same as the case before because the timing is different, and what your colleague has said here is that you were more than a year into the litigation and that earlier you had said that this case, meaning Lisa, doesn't have anything to do with Lima, which is the other case raising the quick claim deed issue, so he would suggest it was a situation of your own making that you made some choices there, and I would appreciate your response to that as well as the timeliness issue. Well, again, you have to look at the record. All that happened there was a motion to remand which added many months and three rounds of supplemental briefing requested by the court on the motion to remand. This quick claim thing didn't just sort of come out of the sky. It had been basically percolating in all these cases, hadn't it? The quick claim was alleged in the Lima case. It had not been alleged initially in this case. When it became clear to us that this client did not understand or accept the false assignment theory that we've propounded in this case, in conferring with the client, I explained to them that they had other claims and they would like to bring them, and so we brought them at the pleading stage. It is not our fault that this process, I mean, all we ever did was file a motion for remand. We had one complaint that we amended as of right to clarify the main claim that we were asserting. When the judge says, I don't like that claim. What else do you have? We proffered another claim, which I knew them to have. No discovery had started. No scheduling conference had happened. Nothing happened, but we have these inordinate delays where the defendant files a motion. It's three or four months or five months out for the hearing. Then at the hearing, the judge says, well, I'd like supplemental briefing on something. That schedule goes on for two or three months. Then she waits a month or two to issue a ruling. This may sound like a long time, but it really isn't. It's at the earliest possible stage of the case. I would also suggest that there's an abuse of discretion because all of these judges were infected by the Lima case. The Lima case has been thoroughly rejected. In the Condor case, the Hawaii Supreme Court came right out and said, Lima was wrongly decided. We disagree with Judge Malway. There is a duty. There is an obligation on the bank to behave a certain way. Now, all these other judges, in both Sigward and in this case, were citing Lima and saying, well, we don't buy the quick claim anyway. And it's late. But A, it wasn't late, and B, Lima was wrongly decided. So if a judge has wrong ideas in their head, are they really exercising their discretion? I don't think so. There's no suggestion here in all this briefing that somehow the judge has a wrong idea in her head. I believe that she cited to the Lima case part of her. And Lima's just a wrong idea. There's nothing correct in Lima. I guess it doesn't matter whether it's correct or incorrect. The question here really is, what was the issue? Because whether it's correct or incorrect will get related on whether the judge was abusing their discretion. You have to ask, what legal standards did they have in their mind as what the law was? If they were wrong on that, and it's very difficult to say that they weren't abusing their discretion if that played a role in their analysis. Thank you. I'm sorry, we've given you substantial extra time as well. I appreciate it. Thank both counsel for your argument this morning. Lisa v. Deutsche Bank is submitted.
judges: Schroeder, D.W. Nelson, McKeown